Filed 10/19/23  In re T.H. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| In re T.H., a Person Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | E081103 |
| Plaintiff and Respondent, | (Super.Ct.No. J289877) |
| v. | OPINION |
| D.B. et al., | |
| Defendants and Appellants. | |

APPEAL from the Superior Court of San Bernardino County.  Annemarie G. Pace, Judge.  Conditionally reversed.

Christine E. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant D.B.

Emily Uhre, under appointment by the Court of Appeal, for Defendant and Appellant T.W.

1

Tom Bunton, County Counsel, Kristina M. Robb, Deputy County Counsel for Plaintiff and Respondent.

The juvenile court terminated the parental rights of D.B. (Mother) and T.W. (Father; collectively, Parents) to their daughter, T.H. (Minor) (Welf. & Inst. Code, § 366.26, subd. (b)(1).)[1] Parents contend a proper inquiry under the Indian[2] Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) (ICWA) was not conducted. We conditionally reverse.

**FACTS**

A.    <u>LOS ANGELES COUNTY</u>

In September 2019, Parents told the Los Angeles County Department of Children and Family Services (DCFS) that they do not have Indian ancestry. DCFS had contact with Father's mother, V.S. (Paternal grandmother [PGM]); Father's stepmother, M.H.; Father's father, E.H.; Father's sister, L.H.; Father's sister, D.H.; Father's niece, B.S.; Father's stepbrother; Mother's mother, R.J.; Mother's Grandmother, J.J.; Mother's sister, E.H.; and Mother's aunt, M.F. (Aunt). DCFS did not conduct an ICWA inquiry with the relatives. One year later, in September 2020, Mother informed DCFS that she moved to San Bernardino County. In July 2021, the Los Angeles County juvenile court transferred the case to San Bernardino County.

---

[1]  All subsequent statutory references will be to the Welfare and Institutions Code unless otherwise indicated.

[2]  "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

2

B.    SAN BERNARDINO COUNTY

The San Bernardino County juvenile court (the juvenile court) accepted the case in August 2021.  On October 26, 2022, the San Bernardino County Department of Children and Family Services (the Department) contacted PGM to ask about Indian ancestry.  "[PGM] stated, 'I have native American ancestry on my mom's side of the family.  My mother and grandmother are Black Cherokee.' "[3]  That same day, the Department called Parents to ask about Indian ancestry, but Mother did not return the Department's message and Father's telephone was not in service.

On November 11 or 22, 2022, the Department sent letters about the case to three Cherokee tribes.  The letters are not included in the record.  On November 14, 2022, the Department called Mother, Father, and Aunt.  Mother and Aunt did not return the Department's messages.  Father's telephone remained out of service.  The Department again called Aunt on November 22, 2022, but Aunt did not return that message either.

By February 2023, none of the three Cherokee tribes had responded to the Department's November letters.  In April 2023, the juvenile court found "the Department has met the burden of inquiry under ICWA" and that "ICWA does not apply."  The juvenile court terminated Parents' parental rights to Minor.

## DISCUSSION

Parents contend the juvenile court erred by finding an adequate ICWA inquiry was conducted.

---

[3] The family is African-American, so we infer that "Black Cherokee" means the family's African-American ancestors were part of the Cherokee Nation.

3

An "Indian child" is defined as an unmarried minor who is either a member of an Indian tribe, or who is eligible for tribal membership and is the biological child of a tribal member. (25 U.S.C.A. § 1903(4).) There are two points in a dependency case where a child welfare agency may have a duty to inquire about whether a child is an Indian child. The first duty can occur when there is no information about the child possibly being an Indian child; that is the initial duty of inquiry. (§ 224.2, subd. (a).) The second duty can occur when there is information about the child possibly being an Indian child, i.e., there is a "reason to believe that an Indian child is involved in a proceeding"; that is the duty of further inquiry. (§ 224.2, subd. (e).)

There is a reason to believe that an Indian child is involved in a proceeding when the court or social worker has information "*suggesting*" that the child may be eligible for membership in an Indian tribe. (§ 224.2, subd. (e)(1) [italics added].) "Courts have broadly construed the reason to believe standard." (*In re I.F.* (2022) 77 Cal.App.5th 152, 163.) " 'Synonyms for the term ["]suggest["] include "imply," "hint," "intimate" and "insinuate." ' " (*Ibid.*) "The duty of further inquiry existed in *In re T.G.*[4] where the mother believed she had Cherokee ancestry through her mother and possible Native American ancestry through her paternal grandfather." (*Ibid.*) "[T]he court in *In re D.F.*[5] found that a mother's statement 'that she may have Indian heritage from a tribe in New Mexico' was sufficient to trigger further inquiry." (*Id.* at p. 164.)

---

[4] *In re T.G.* (2020) 58 Cal.App.5th 275, 283-285, 292, 297.

[5] *In re Dominic F.* (2020) 55 Cal.App.5th 558, 569.

In *In re I.F.*, the "mother's statements that she had been told by her paternal grandmother that she had Native American ancestry through her paternal grandfather, coupled with the maternal grandfather's statements that his father told him the family had Native American ancestry in Minnesota, established a reason to believe [the children] are Indian children and thus triggered the duty of further inquiry under California law." (*In re I.F.*, *supra*, 77 Cal.App.5th at p. 164, fn. omitted.)

In the instant case, PGM claimed that her " 'mother and grandmother are Black Cherokee.' " PGM's claim that her relatives " 'are Black Cherokee,' " could mean that they are tribal members. Thus, PGM's statement suggests that Minor could be eligible for membership in a Cherokee tribe. (§ 224.2, subd. (e)(1).) As a result, the duty of further inquiry was triggered.

The Department asserts PGM's statement that her " 'mother and grandmother are Black Cherokee' " does not satisfy the statutorily enumerated circumstances that suggest tribal membership eligibility. (§ 224.2, subds. (d)(1) & (e)(1).) The Department's argument is not persuasive because the statutorily enumerated circumstances are not an exhaustive list. The statute provides, "Information suggesting membership or eligibility for membership includes, *but is not limited to*, information that indicates, but does not establish, the existence of one or more of the grounds for reason to know enumerated in paragraphs (1) to (6), inclusive, of subdivision (d)." (§ 224.2, subd. (e)(1).) The enumerated list of circumstances suggesting tribal membership is merely a starting point.

The Department relies on *In re Austin J.* (2020) 47 Cal.App.5th 870, in which the mother told the child welfare agency "that she 'may have Indian ancestry' and had been 'told that [her] mother had Cherokee [ancestry],' " and the mother's aunt said "that she 'may have had Cherokee heritage.' " (*Id.* at p. 888.) The appellate court explained that tribal membership "depends 'on the child's political affiliation with a federally recognized Indian Tribe,' not the child's ancestry." (*Id.* at pp. 888-889.) Therefore, "Indian ancestry, without more, does not provide a reason to believe that a child is a member of a tribe or is the biological child of a member." (*Id.* at p. 889.)

The instant case is distinguishable from *In re Austin J.* because PGM's statement that her " 'mother and grandmother are Black Cherokee,' " was not an equivocal claim of ancestry like those in *In re Austin J.* In other words, PGM did not say she may, might, or could have Cherokee ancestry. Instead, she said that her mother and grandmother *are* Cherokee, which can be understood as suggesting they *are* members of the Cherokee Nation. Thus, PGM's claim differs from the claims of possible ancestry that were made in *In re Austin J.*

Further inquiry requires a child welfare agency to interview extended family members to gather identifying information about a child's parents, grandparents, and great-grandparents, "including maiden, married, and former names or aliases, as well as their current and former addresses, birth dates, places of birth and death, tribal enrollment information of other direct lineal ancestors of the child, and any other identifying information, if known." (§§ 224.2, subd. (e)(2)(A), 224.3, subd. (a)(5)(C); see also Cal. Rules of Court, rule 5.481(a)(4)(A).)

6

There is no indication that the Department tried to contact Father's stepmother, M.H.; Father's father, E.H.; Father's sister, L.H.; Father's sister, D.H.; Mother's mother, R.J.; Mother's Grandmother, J.J.; or Mother's sister, E.H. to gather identifying information that could help a tribe determine whether Minor is eligible for membership. Due to the Department's failure to comply with the further inquiry requirements, the juvenile court erred by finding an adequate ICWA inquiry was conducted.

An ICWA inquiry error is prejudicial "where the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child." (*In re Benjamin M.*, *supra*, 70 Cal.App.5th 735, 744.) Father's stepmother, father, and sisters; and Mother's mother, grandmother, and sister, are available to contact because DCFS spoke with them. Those relatives are also likely to know the names, addresses, birthdates, and places of birth of Minor's parents, grandparents, and great-grandparents. Accordingly, there was readily obtainable information that was likely to bear meaningfully on whether Minor is an Indian child. Therefore, the juvenile court's error is prejudicial, and we will conditionally reverse for a proper ICWA inquiry.

The Department contends the error is harmless because there is nothing in the record indicating the paternal relatives have information about their family's alleged Indian ancestry. A further inquiry is about collecting identifying information (§§ 224.2, subd. (e)(2)(A), 224.3, subd. (a)(5)(C) ["identifying information"]), so the tribes can determine if Minor is eligible for membership (§ 224.2, subd. (f) [tribes decide membership eligibility]). The extended relatives are likely to know identifying

7

information, such as birthdays and places of birth.  Therefore, meaningful information is readily available.

The Department also contends the error is harmless because the maternal relatives are unlikely to have information about the alleged Indian ancestry of the paternal relatives.  In a further inquiry, the Department is tasked with gathering identifying information about Minor's maternal and paternal relatives so the tribes can determine whether Minor is eligible for membership.  (§§ 224.2, subds. (e)(2)(A) [gather information] & (f) [tribes decide membership eligibility], 224.3, subd. (a)(5)(C) ["All names known of the Indian child's biological parents, grandparents, and great-grandparents"].)  In other words, the Department needs to try to gather identifying information for both sides of the family—not just the paternal side.  In sum, the error requires reversal.

## DISPOSITION

The order terminating parental rights (§ 366.26) is conditionally reversed.  The juvenile court shall order, pursuant to ICWA and section 224.2, subdivision (e), that within 30 days of the remittitur being issued that the Department perform a diligent further inquiry.  If adequate additional investigation is performed but yields no further information that could assist the Bureau of Indian Affairs or a specific tribe or tribes in determining whether Minor is an Indian child, then the juvenile court shall reinstate its section 366.26 order.  (§ 224.2, subd. (i)(2).)  If, as a result of that inquiry, identifying information is obtained that may assist the Bureau of Indian Affairs or a tribe in determining whether Minor is an Indian child, then the Department shall provide the

information to the relevant tribe(s) and the Bureau of Indian Affairs. (§ 224.2, subd. (e)(2)(C).)

In the event no tribe responds indicating Minor is an Indian child, or if no tribe seeks to intervene, then the juvenile court shall reinstate its section 366.26 order. (§ 224.2, subd. (i)(2).) If a tribe determines that Minor is eligible for membership and seeks to intervene in the proceedings, then the juvenile court shall vacate its prior orders and conduct all proceedings in accordance with ICWA and related California laws. (§ 224.2, subd. (i)(1); *In re Josiah T.* (2021) 71 Cal.App.5th 388, 409.)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER

J.

We concur:

McKINSTER

Acting P. J.

CODRINGTON

J.